United States District Court
For The
District of Columbia

United States of America

Case No. 95-CR-0046 (RCL)

Register Case No. 20464-016

v.

Honorable Judge, Royce C. Lamberth

Kobi L. Mowatt,
Petitioner

Let this be filed.
Royce C. Lamberth
U.S. D.J. 3/30/21

---

Motion for Compassionate Release under §3582 (c)(1)(A) based on COVID-19 dangers and institution conditions thereof. Includes sentence compelling/satisfactory under post-conviction discretion of the court, warrant immediate relief, by Kobi L. Mowatt, pro se

Comes Now, Kobi L. Mowatt, pro se, the petitioner respectfully Moves

this court to file Compassionate Release Motion under §3582 (c)(1)

(A) especially based on COVID-19 dangers and institution conditions

thereof; and including compelling/satisfactory sentence factors for

review under post-conviction discretion of the court, warrent

immediate relief; in following support the petitioner provides.

RECEIVED
Mail Room

MAR 25 2021

Angela D. Caesar, Clerk of Court
U.S. Bankruptcy Court, District of Columbia

Procedural History / Facts
The petitioner pled guilty to one count of 18 USC 1962 (D) Conspiracy

To Participate In A Racketeer Influenced Corrupt Organization (RICO).

The court imposed a 35 year sentence to be served, which date of sentence began on January 07, 1997. The petitioner agreed to waiver of direct appeal rights within plea bargain signed, to avoid maximum penalty of charged offenses. The petitioner filed a motion under 28 U.S.C. §2255 to vacate or set aside the conviction or to correct the sentence, currently pending decision in the US district court of Columbia. Approximately February 2020, the COVID-19 pandemic confirmed positive cases entered the United States prison system. In the Coronavirus Aid, Relief, and Economic Security (C.A.R.E.) Act, Congress provided that, during the emergency period the United States President declared a national emergency with respect to COVID-19 and pursuant to the Director of the Bureau of Prisons (FBOP) exercise this authority or imposed by Attorney General by laws relating to the commitment, control, or treatment of persons charged with or convicted of offenses against the United States, issued a National Lock Down in means to prevent, slow, or contain the spread of COVID-19 in the prison system. During the period of November 16, 2020 and thereafter the petitioners housing prison issued a quarantine.

lock down due to multiple positive COVID cases of prisoners and staff members, including the petitioner contracting the highly fatal coronavirus disease (COVID-19).

As provided in this motion, a prison sentence may be reduced for extraordinary or compelling reasons, on a motion by the Bureau of Prisons or/and after denied request thereof, 30 days after may file motion for sentence reduction to the court under 18 USC §3582(c)(1)(A) (Compassionate Release). Also, the petitioner proves satisfactory factors of sentence and includes relevant rehabilitation deem petitioner is not a danger to the safety of any other person or to the community, under §3553(a)(2)(C)(D) warrent a reduction of sentence, pursuant to Compassionate Release under §3582(c)(1)(A) after consideration of this court.

Personal Statement / Argument

I. The petitioner has satisfied approximately 25 years of imprisonment pursuant to a sentence imposed for the offenses, accepts personal guilt by plea bargain; and rehabilitative factors warrent reduction under §3553(a)(2)(c)(D).

The petitioner was sentenced by the US district of Columbia court, to serve a 420 months imprisonment term (35 years). Which start date of sentence began January 07, 1997. The petitioner signed a plea offer which agreed to 420 months, to avoid the maximum penalty of possible Life with out parole if convicted by jury trial. Further, the court must continue to factor in consideration that the petitioner entered a plea of guilty while accepting plea bargain.

Rather this sentence may have calculated appropriate by the court or appear just for such an offense, serving well-over two decades of federal maximum security incarceration is nothing short of substantial punishment, and a great loss to the petitioner. In the duration of Mr. Mowatt imposed punishment he has fully learned to value and while appreciating the freedom and liberty that was stricken from him. The unfortunate losses and disconnect from civil society is numerous. The petitioner has experienced the passing of four grandparents since incarcerated. He is extremely grateful to not have loss immediate family members as they are 25 years older in age. Mr. Mowatt mother resides in Jamaica and father remains in the states, both awaiting the release of their loving son.

As any could imagine there is an emotional strain and a constant level of distress between family, love ones and those imprisoned. Yet, it is usual and compelling punishment who have experience these factors for 25 years.

The petitioner approaches statutory projected release date April 01, 2027, yet the full sentence term ends on February 10, 2031. The 25 years time served should not be viewed lightly by the court. In such period Mr. Mowatt has utilize every opportunity and means to educate and better himself. Being sentence at the age of 23 years of age and including serving imprisonment subjected to hostile and a perpetual violent envoriment of which the Level 7, Maximum security penitentiary the petitioner was housed the entire term, did not come without error and consequence. As the petitioner attempted to adapt, survive and pursue correction, he found himself defending life and death circumstances. (e.g., see Attachment C, housing institution memos in support of dangerous conditions.) As a result the petitioner has received infractions due to these circumstances. However, Mr. Mowatt personal growth, educational training and overall

rehabilitation has become significant. Such as gaining a Diploma (GED); and completing various programs and classes, e.g., Code of conduct, release prep on finances, parenting program, constitutional Law, and general wellness. The petitioner is not a danger to the safety of any other person or to the community, but has diligently sought to prepare for re-entry to society. For the satisfactory length of 25 years served, compelling conditions thereof (and following in this motion), and the rehabilitative factors considered warrant relief, to preserve constitutional fairness and just punishment, and to promote for the law. Under §3553 (a)(2) pursuant to Compassionate Release.

**II.** The Living and Health Condition of the federal prison system while serving a 35 years imposed sentence.

Most of the public is unaware of the poor living and health conditions of the prison system. Lack of essential regular cleaning supplies, facility maintenance and routine health care. The prison Mr. Mowatt is currently housed, has been in constant repair for many years with no sense of effective change for

prisoners health. The disinfect chemical issued by administration is a weekly challenge to obtian and usually deluded if even issued regularly at all. Showers are usually running cold water while most have black mold on walls. Because the prison experiences constant lock downs orderly's are limit if at all to clean showers and frequently use areas such as phones and computers. The ventilation system, "when working," pumps black dust through the filtered vents in each prisoners cell-room, forcing them to manufacture vent covers. Many staff members while prison on lock down distribute food without wearing issued plastic gloves  (e.g., this poor practice continued throughout COVID-19 quarantine lock downs). In event that a prisoner is empty of weekly issued two rolls of toiletry it is nearly impossible to obtain additional, unless another prisoner carrys extra. (i.e., despite toiletry being a prisoner's right, not to the discretion of the institution.)  These and many more health concerns and conditions, combined with the mental health effect of being subjected to confinement in a 6 by 9 feet cell approximately a total of eight months each year due to security lock downs.

According to Dr. Charles Lee, President-elect of the american college of correctional physicians states: "Even before the pandemic many older inmates had poor health after decades of "hard living," from my experience, their physiological age is generally 20 years greater than their chronologic age - from drugs, from fights, from being incarcerated and not getting health care." Dr. Lee also said, up to 40% of incarcerated adults being black, are with higher risk of chronic diseases; such as diabetes, hypertension and asthma.

In reviewing a prisoner's right to challenge the Eight Amendment, it protects against cruel and unusual punish during confinement. The Supreme Court has distinguished between official conduct that is part of the punishment formally imposed for a crime and official conduct that does not purport to be punishment, such as conditions of confinement, medical care, and restoration of control over inmates. In addition, many would agree in regards of public health considerations, society has both legal and ethical responsibilities to protect the health of inmates.

III. COVID-19 Conditions, Dangers and Effects
due to spread throughout the prison system and
the petitioners warrent release from prison should
be granted, ensures a safety/release plan.

At the start of 2020 the United States of America along with most nations

around the world witness the introduction of the deadly coronavirus pandemic.

Since than, the world has watched, experienced first hand and mourn. Within

a year's time, COVID has been responsible for millions of deaths. It has no

boundaries, no discretion, no time restraints ( for there are accounts of

those who died in 24 hours of contracting COVID), no race

( note, that blacks are 40% more likely to contract COVID over another race),

and there's no circumstance or living situation COVID cannot penetrate.

Approximately Febrary 2020, confirmed positive cases were within the

US prison system. Congress, Attorney General and Federal Bureau of

Prisons system, Concluded Director Michael D. Carvajal issued a

Nation-Wide Lock Down - state of emergency under the C.A.R.E.S.

Act ( Coronavirus Aid, Relief, and Economic Security, Act ) The

New York Times, research and sources found that prisoners are four times

as likely to become infected than people in the general population. At least 200,000 inmates have already been infected with COVID-19 and at least 1,450 inmates and includes correctional officers have died from the virus.

For the security procedures and infrastructure of the prison system, it cannot meet requirements or standards issued by the CDC (the Center for Disease Control). For example, the petitioners prison housing unit is of 4 pods that holds 120 inmates each, 2 inmates per cell which totals 60 cells per pod, each cell is approximately 15 inches apart and each pods ventilation system circulate through each and every connecting pod and cell. Dispite the institution issuing face-mask, posting prevention care instructions and the occasional deluded cleaning chemicals, it is impossible to social distance, 120 inmates operates 4 phones for use daily, 120 operate just 3 computers daily and in an event of outbreak prisoners only option of 'quarantine' is being lock down and confined to their cells in the same conditions. Furthermore, include the additional stress load on the already medical care lack and poor standards and staffing, prisoners are a vulnerable target for contracting the deadly virus.

As of November 16, 2020 the petitioner's housing prison FCC, USP Pollock was placed on instant quarantine lock down due to multiple positive testing of COVID-19. Within weeks of the quarantine over 200 prisoners and 60 staff members tested positive. At least 60 inmates go on to contracting the virus housed in the petitioners living area-pod. Including, Mr. Mowatt himself was infected with COVID-19. Mr. Mowatt did not experience symptoms as many others, yet his life was put in jeopardy just the same. Fortunately the petitioner recovered with his life, yet remains concerns of recontracting the virus, after effects or lasting effects and vacine effectiveness. Rather the petitioner had a healthy bill of health prior to the pandemic, daily he is subjected to harsh and potential fatal conditions each day of his imprisonment. Deeming his health and over-all well-being in a poor state. The petitioners housing prison remained on quarantine lock down for 90 days due to the continual spread of COVID-19 among inmates. There were no reports of fatal results, the population recovered to negative testing and then the institution resumed on COVID-modified operations. January 2021, as the general population prepares

for yet another spike of infected due to passing holiday travel, the prison

population remains a target without any sense of meaningful aid. Prison medical staff

has offered COVID-19 vaccinations to the high-risk inmates, in accordingly to

general population issued concerns by Congress. Yet, no declaration of

vaccines offer to remaining prison system population or the recognition that all

inmates are at constant 'high-risk' due to prison conditions.

In several sources reports, including The American Medical Association, are

calling for vaccines to be given to incarcerated inmates and employees at prisons,

jails and detention centers, citing the unique risk to people inconfinement – and the

potential for outbreaks to spread from correctional centers, straining community hospitals;

"We aren't saying that prisoners should be treated any better than anybody else, but they

shouldn't be treated any worse than anybody else who is forced to live in a congregate

setting," said Dr. Eric Toner, co-author of a report on vaccine allocation published

by the Johns Hopkins Center for health security. The report lists prisoners as a

priority group, Dr. Toner said, "though not at the very tiptop, but at the next tier

down. The idea is controversial. Allocating precious medical resources to people

who are serving time may be anathema to much of the public, but it is widely

accepted that the nation has an ethical and legal obligation to safeguard incarcerated peoples health. The Bureau of Prisons has released thousands of prisoners with a wide-range of offenses, age, race and health concerns rather preexisting or healthy. (e.g., US v. Coleman-Bey, No. 1974 Fel. 089779@1, 4 July 13, 2020) Simply due to the COVID-19 pandemic subjects the vast prison population to an unduly high-risk conditions. Study's proved early-middle of 2020, 13% of the millions that populate the prison system were infected. Since than there has been a surge of infected in this country while the death toil rises each day, and two new strain of COVID-19 spreading.

The petitioner has a very accomplish and extensive support team. Both of family and friends, which has remain in close contact. As they eagerly await Mr. Mowatt release, they are able to attest to the rehabilitation and strength of his character over 24 years. Mr. Mowatt will be released to a loving and moral supportive family that are a credit to society-community and up standing citizen. Three cousins who have degrees at Harvard University, two family members that are doctors, two that are lawyers,

a uncle thats a CEO to a reputable food company and, a grandmother and a aunt who are representives for The United Nations (UN). This Kind of support will not only help Mr. Mowatt avoid recidivism once released to his community but will contribute to continue rehabilitation and ensure a safe transition. The petitioners family will make arrangements to pick-up from the prison, and outline the necessary health precaution according to the CDC to transfer safely. Upon release employment will also await and ready for the petitioner. Mr. Mowatt is afforded stay with his father once released. The petitioners plans for release set forth, and rehabilitation are proof of not a danger to the safety of any other person or to the community.

Conclusion
The petitioner for the factors mentioned in this motion and the fundamentals of justice respectfully request that this motion for Compassionate Release be granted. Considering Mr. Mowatt; plead guilty for the charged offenses, accepted the lengthy punishment for the crime and served to date nearly 87% of his sentence (24 years), and has achieved great

level of correction and rehabilitation while subjected to a dangerous living enviroment of federal maximum security penitentiary. For this court to deny the petitioners motion for Compassionate Release would be contrary to respect for the Law and purpose for fair and just punishment of the prison system (i.e., Correction and Rehabilitation ). Creating a possible adverse effect on the petitioners future and libertys of life. May the decision of this court up hold integrity therefor the Justice system, and not reward but confirm the petitioners 24 years of due efforts of correction while incarcerated, and including extraordinary and compelling circumstance of this prisoner due to COVID-19, in the interest of justice and health.

Respectfully Submitted,

Kobi L. Mowatt
Register Number: 18080-026
United States Penitentiary, Pollock
P.O. Box 2099
Pollock, Louisiana 71467

Certificate of Service

I certify, Kobi L. Mowatt, pro se, the petitioner prepared and

filed this motion for Compassionate Release under §3582 (c)(1)(A)

based on COVID-19 dangers, with the United States District Court

of Columbia, clerk of the court by certified US Mail; Including copy

mailed to Attorney General.

Executed on date _____ under penalty of perjury pursuant to 28 USC §1746.

Respectfully Submitted,

CC:
Attorney General

Kobi L. Mowatt
Register Number: 18080-026
United States Penitentiary, Pollock
P.O. Box 2099
Pollock, Louisiana 71467

Appendix

Table of Contents

Attachment A...   Supportive documentation of Max prison enviroment/COVID operations

Attachment B...   Rehabilitation progress review and re entry plan

Attachment C...

Attachment A

**NOTICE TO INMATE POPULATION**
United States Penitentiary
Pollock, Louisiana

The United States Penitentiary (USP) Pollock, was placed on Lockdown/Modified Operations on Wednesday, August 5, 2020.   This was implemented as a result of an inmate assault on a staff member.   I want to remind all inmates this savage behavior toward staff or inmates will not be tolerated.   It is our goal and it will continue to be our goal to ensure a safe operation at USP Pollock.   Subsequently, as our goal is to ensure a safe operation, we will conduct thorough targeted shakedowns throughout the institution.   The institution will not resume COVID/Modified operations until the completion of the targeted shakedowns.

I expect your cooperation and compliance with this matter.   Questions or concerns should be directed to any USP Pollock staff member.

Chris McConnell, Complex Warden                    8-6-2020

                                                   Date

20 of 27.

**NOTICE TO INMATE POPULATION**
United States Penitentiary
Pollock, Louisiana

The United States Penitentiary (USP) Pollock, was placed on Lockdown on Tuesday, September 15, 2020.   This was implemented as a result of an inmate-on-inmate assault with weapons that resulted in death.   This incident has halted the progress of programming and visiting at FCC Pollock.   As previous inmate bulletins have outlined, there is a zero tolerance policy on the manufacturing and use of weapons in any circumstance and it will not be tolerated.   These actions place inmates and staff in danger and hinder the ability to ensure a safe environment.

All FCC Pollock staff, to include the Executive Staff, have gone above and beyond to ensure the institution operates in a safe and secure manner.   This includes enforcing rules, unit rounds, and addressing all inmate questions and concerns on a daily basis.

Subsequently, as our goal is to ensure a safe operation at USP Pollock, we will conduct a thorough shakedown throughout the entire institution, to include housing units, work sites, recreation yard, and common areas to remove dangerous contraband.   Additionally, SIS will conduct targeted interviews and gather information why this unnecessary act of violence occurred.   Lastly, a pending institution security enhancement will be completed.   The institution will not resume modified COVID operations until the completion of the shakedowns, interviews, and security enhancements.

I expect your cooperation and compliance with this matter.   Questions or concerns should be directed to any USP Pollock staff member.

_____                    9-15-2020
Chris McConnell, Complex Warden                          Date

## NOTICE TO INMATE POPULATION
### United States Penitentiary
### Pollock, Louisiana

The United States Penitentiary (USP) Pollock, was placed on Lockdown on Thursday, December 24, 2020, as the result of a cross-race incident.  Specifically, multiple inmates were fighting with weapons causing several inmates to be transported to an outside hospital for treatment of various injuries.  As previous inmate bulletins have outlined, there is ZERO tolerance on the manufacturing and use of weapons in any circumstance and it will not be tolerated.  These actions place staff and inmates in danger and hinder the ability to ensure a safe environment.

Subsequently, as our goal is to ensure a safe operation, we will initiate a thorough investigation by conducting interviews of inmates to attain further information as to why this event occurred and to prevent any reprisal.  Based on the information received, we will assess and move forward to targeted searches throughout the institution.

This incident has once again halted the progress of programming and returning to Covid modified operations at USP Pollock.  Furthermore, it is a direct reflection of inmates' refusal to comply with the rules and regulations preventing the safe orderly operations of the institution.

Until the safe and orderly running of this institution can be determined, the institution will remain on Lockdown.  Visitation will be suspended until our investigation is completed.

I expect your full cooperation and compliance with this matter.  Questions or concerns should be directed to any USP Pollock staff member.

_____
**Chris McConnell, Complex Warden**

_12-28-2020_
**Date**

Attachment B



## Individualized Reentry Plan - Program Review  (Inmate Copy)

SEQUENCE: 00701733
Team Date: 11-20-2019

Dept. of Justice / Federal Bureau of Prisons

Plan is for inmate: MOWATT, KOBI L  20464-016

| | |
|---|---|
| Facility: | POL POLLOCK USP |
| Name: | MOWATT, KOBI L |
| Register No.: | 20464-016 |
| Age: | 48 |
| Date of Birth: | 07-18-1971 |

| | |
|---|---|
| Proj. Rel. Date: | 09-30-2027 |
| Proj. Rel. Mthd: | GCT REL |
| DNA Status: | CAA02595 / 05-25-2011 |

### Detainers

| Detaining Agency | Remarks |
|---|---|
| NO DETAINER | |

### Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| POL | A3 ORDERLY | A3 UNIT ORDERLY | 10-13-2018 |

### Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| POL | ESL HAS | ENGLISH PROFICIENT | 08-25-1997 |
| POL | GED HAS | COMPLETED GED OR HS DIPLOMA | 08-25-1997 |

### Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| POL | C | BASICS OF PLAYING SOCCER 8HR | 07-08-2019 | 07-13-2019 |
| POL | C | CONSTITUTIONL LAW | 01-01-2019 | 03-29-2019 |
| POL | C | REAL ESTATE | 01-01-2019 | 03-29-2019 |
| POL | C | BUDGETING BASICS | 01-01-2018 | 03-31-2018 |
| POL | C | CODE OF CONDUCT (ALL LEAGUES) | 10-31-2017 | 10-31-2017 |
| POL | C | BASIC MATH 6:30-8:30PM | 07-01-2017 | 09-21-2017 |
| POL | C | USP SUN SMART  RPP1 | 06-05-2017 | 06-26-2017 |
| POL | C | LIFELONG HEALTH PT 1 RPP1 | 06-06-2017 | 07-04-2017 |
| POL | C | BASIC ART | 05-08-2017 | 06-26-2017 |
| CAA | C | BEGINNING GUITAR | 08-20-2014 | 09-19-2014 |
| CAA | C | REMEDIAL ON ALL GED SUBJECTS. | 12-02-2013 | 01-28-2014 |
| CAA | C | BEGINNING GUITAR | 10-30-2013 | 12-03-2013 |
| CAA | C | ADVANCED CONVERSATIONAL SPAN. | 07-16-2013 | 09-03-2013 |
| CAA | C | NUTRITION | 10-03-2012 | 11-02-2012 |
| CAA | C | GENERAL WELLNESS | 02-07-2012 | 03-08-2012 |
| CAA | C | RPP6 COMMUNICATION 101 | 06-24-2010 | 06-24-2010 |
| CAA | C | RPP3 RELEASE PREP ON FINANCES. | 04-02-2010 | 06-15-2010 |
| CAA | C | PAN AFRICAN HISTORY | 04-05-2010 | 06-04-2010 |
| FLP | C | DELTA B LIVING PLANET ACE | 10-16-2007 | 01-10-2008 |
| FLM | C | CULTURES OF THE WORLD | 02-22-2006 | 05-16-2006 |
| FLM | C | HISTORY OF ANCIENT EGYPT -2 | 01-12-2005 | 04-05-2005 |
| FLM | C | BLACK AMERICANS | 06-10-2004 | 08-18-2004 |
| FLM | C | DISC OF ANCIENT CIVILIZATIONS | 03-18-2004 | 06-09-2004 |
| FLM | C | WORLD RELIG-ISLAM/CHRISTIANITY | 04-07-2004 | 06-29-2004 |
| FLM | C | THE JOY OF SCIENCE - PART 3 | 01-08-2004 | 03-17-2004 |
| FLM | C | INSIDE THE GLOBAL ECONOMY | 10-09-2003 | 01-07-2004 |
| FLM | C | PARENTING PROGRAM | 09-22-2003 | 12-12-2003 |
| FLM | C | THE JOY OF SCIENCE - PART 2 | 07-31-2003 | 10-08-2003 |
| FLM | C | ART OF THE WESTERN WORLD | 08-13-2003 | 10-21-2003 |
| FLM | C | INTRO TO CONTEMPORARY MATH | 05-14-2003 | 08-13-2003 |
| FLM | C | WWII:A MILITARY & SOCIAL HIST | 04-17-2003 | 07-30-2003 |
| FLM | C | PARENTING 2 PROGRAM | 05-09-2003 | 07-03-2003 |
| FLM | C | THE AFRICANS | 03-05-2003 | 05-06-2003 |
| FLM | C | THE JOY OF SCIENCE - PART 1 | 02-06-2003 | 04-16-2003 |
| BMP | C | CULIARY ARTS VT,M-F 12:30-3:30 | 07-05-2001 | 10-08-2001 |
| BMP | C | MUTUAL FUNDS, SAT. 1:30 PM | 02-17-2001 | 04-22-2001 |
| THA | C | SPANISH (ACE) | 09-23-1997 | 12-17-1997 |

24 of 27.



**Individualized Reentry Plan - Program Review  (Inmate Copy)**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: MOWATT, KOBI L  20464-016

SEQUENCE: 00701733
Team Date: 11-20-2019

**Discipline History (Last 6 months)**

| Hearing Date | Prohibited Acts |
|---|---|

** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS **

**Current Care Assignments**

| Assignment | Description | Start |
|---|---|---|
| CARE1 | HEALTHY OR SIMPLE CHRONIC CARE | 09-23-2015 |
| CARE1-MH | CARE1-MENTAL HEALTH | 10-08-2010 |

**Current Medical Duty Status Assignments**

| Assignment | Description | Start |
|---|---|---|
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 09-23-2015 |
| YES F/S | CLEARED FOR FOOD SERVICE | 09-16-2015 |

**Current Drug Assignments**

| Assignment | Description | Start |
|---|---|---|
| DAP REFER | DRUG ABUSE PROGRAM REFER | 08-23-2019 |
| ED FAIL R | DRUG EDUCATION FAIL-REQUIRED | 09-04-2009 |

**FRP Details**

| Most Recent Payment Plan |
|---|

**FRP Assignment:** **COMPLT**  **FINANC RESP-COMPLETED**   **Start: 03-23-1998**

Inmate Decision:  **AGREED**   **$25.00**   Frequency: **QUARTERLY**
Payments past 6 months:   **$0.00**   Obligation Balance: **$0.00**

**Financial Obligations**

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 1 | ASSMT | $50.00 | $0.00 | IMMEDIATE | COMPLETEDZ |

** NO ADJUSTMENTS MADE IN LAST 6 MONTHS **

**Payment Details**

Trust Fund Deposits - Past 6 months:  $0.00          Payments commensurate ?   N/A
New Payment Plan:   ** No data **

**Progress since last review**

Inmate has not enrolled in the 7 Habits or the Job Skills class as previously recommended.

**Next Program Review Goals**

Enroll in a Job Skills class by next review

**Long Term Goals**

Enroll in and complete 7 Habits class by November 2020.

**RRC/HC Placement**

No.
Management decision - Will review for RRC 17-19 months to PRD.

**Comments**

** No notes entered **

25 of 27.

Attachment C